UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| GEORGIE M. BREWER and<br>BARBARA A. GREENE, | )<br>)<br>) |
| Plaintiffs, | )<br>) No. 3:10-cv-0908 |
| v. | )<br>) Judge Sharp |
| NEW ERA, INC., | )<br>) |
| Defendant. | ) |

# MEMORANDUM

Sisters Georgie M. Brewer and Barbara A. Greene ("Plaintiffs") put finishing touches on pots and pans for Defendant New Era, Inc., for 34 years before they were laid off amid the economic collapse of 2008. Although they recognized the economic necessity of layoffs, the two women assumed they would be protected given their decades of service to the company and the seniority system that had been in place under the previous owner. New Era, however, chose to terminate them along with six other employees, all of whom it identified based on neutral criteria. Brewer and Greene assert that they were terminated not for legitimate, nondiscriminatory reasons but because they are African-American and over the age of 40. They have no direct evidence to support the assertion, though, and the circumstantial evidence they cite—including testimony that one New Era supervisor made many racially discriminatory remarks outside their presence and unconnected with their termination—is insufficient as a matter of law to establish that race or age discrimination, rather than economic necessity, was the reason for laying them off. Therefore, summary judgment will be entered for Defendant.

1

# FACTS[1]

Plaintiffs are African-American sisters who were longtime employees of New Era, a private company that manufactures stainless steel cookware in Clarksville, Tennessee. They were originally hired by its predecessor company, Vollrath, which manufactured pots and pans for over a century at a factory in Clarksville. Workers at Vollrath were unionized, and some employment decisions were made according to a seniority system: on the day they were both hired, Plaintiffs were made to flip a coin in order to determine who would have greater seniority for employment purposes. However, when Donald Henn bought the company in 1983 and changed its name to New Era, the union was decertified. New Era then became an at-will employer, and it has remained one in the years since, informing employees of its at-will employment practices in an employee handbook.

After purchasing the company, Henn moved to Clarksville to run the plant. In 1999, he moved away, turning over the day-to-day operation of the plant to Terry Siebert, and, eventually, to John Martelli, a longtime company employee. As plant manager, Martelli was responsible for manufacturing and for hiring and firing at the plant. Henn, who described himself as a hands-off manager, trusted Martelli and considered him a friend.

Throughout their tenure at New Era, Plaintiffs worked almost exclusively on the packing line, where they assembled items for "cook sets" so they could be boxed and, ultimately, shipped. Their experience was largely limited to that task: they had not operated the presses that form pots and pans nor the machine used to wash them. And

---

[1] Unless otherwise noted, all facts are drawn from Defendant's Statement of Undisputed Facts (Docket No. 26-1), Plaintiffs' response thereto (Docket No. 32), and the related exhibits. Although facts are taken from submissions made by both parties, on a motion for summary judgment, the Court views the factual evidence and draws all reasonable inferences in favor of the non-moving party. *See Matsushita Elec. Indus. Co. v. ZenithRadio Corp.*, 475 U.S 574, 586 (1986); *McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).

neither had significant experience operating the machine that trims excess material from pots and pans after they leave the presses.

In 1994, Plaintiffs both filed charges of discrimination with the Tennessee Human Rights Commission ("THRC") and the Equal Employment Opportunity Commission ("EEOC"). They alleged that they were being paid the same wage as white employees who had far less experience and responsibility than they had, and that the disparity was a result of race discrimination. New Era responded that seniority had no bearing on wages—every employee who did the same job received the same wage—and that "seniority is only a factor in job posting and lay off [*sic*] situations." Plaintiffs continued to work at New Era after their EEOC charge was resolved.

In 2008, faced with declining sales revenues amid the U.S. economic collapse, New Era concluded that it needed to reduce operating expenses, including payroll. It decided to reduce its workforce with a goal of retaining employees who had been "cross trained" in multiple departments on multiple jobs; employees who demonstrated consistently that they worked well with others; and employees who consistently "ran a good production." Martelli met with supervisors Jeff Price and James Northington to determine which employees would be retained and which would be laid off according to these criteria.[2] Eight employees were identified for layoff; of the eight identified, three were Caucasian, three were African-American, one was Asian-American, and one was Hispanic. Two were under the age of 40. After selecting the eight employees, Martelli contacted New Era's corporate officers, Don Henn and his son Jeffrey Henn—Martelli's superiors—to explain his rationale for choosing each employee for layoff. He then informed the affected

---

[2] Plaintiffs assert that this statement is disputed but cite to a portion of Northington's deposition that is not in the record. (Docket No. 32 at 5). Accordingly, the Court considers it undisputed. Fed. R. Civ. P. 56(e)(2).

employees, which included Plaintiffs, that they would be laid off on November 14, 2008. After the eight were laid off, one employee, Micha Taylor, who is Korean-American, was called back to work in January 2009.

Two or three months before the layoffs were announced, according to Northington, who is presently a plaintiff in a separate race discrimination suit against New Era, Jeffrey Henn stated in a meeting that Plaintiffs were too old to still be working and needed to retire. Furthermore, Northington testified that supervisor Jeff Price, himself Korean-American, made a large number of racially offensive statements about African-Americans in the years before Plaintiffs were laid off. Northington said he complained about this treatment to Martelli, who made it clear that he would not tolerate complaints about Price and, according to Northington, actually fired two other employees who complained about Price's threats and use of racial slurs. Northington testified that he lodged complaints about Price to Don Henn and, repeatedly, to Jeffrey Henn, but nothing was done about the situation.

In 2009, Plaintiffs filed charges of discrimination with the EEOC alleging discrimination based on race and age. The EEOC issued "Right to Sue" Notices on July 20, 2010, and this action was timely filed on September 29, 2010.

## **LEGAL STANDARD**

A party may obtain summary judgment if the evidence establishes that there are no genuine issues of material fact for trial and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *Covington v. Knox Cnty. Sch. Sys.*, 205 F.3d 912, 914 (6th Cir. 2000). The moving party bears the initial burden of satisfying the court that the standards of Rule 56 have been met. *See Martin v. Kelley*, 803 F.2d 236, 239 n.4 (6th Cir. 1986). The

ultimate question to be addressed is whether there exists any genuine issue of material fact that is disputed. *See Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986); *Covington*, 205 F.3d at 914 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). If so, summary judgment is inappropriate.

To defeat a properly supported motion for summary judgment, the nonmoving party must set forth specific facts showing that there is a genuine issue of material fact for trial. If the party does not so respond, summary judgment will be entered if appropriate. Fed. R. Civ. P. 56(e). The nonmoving party's burden of providing specific facts demonstrating that there remains a genuine issue of material fact for trial is triggered once the moving party shows an absence of evidence to support the nonmoving party's case. *Celotex*, 477 U.S. at 325. A genuine issue exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. In ruling on a motion for summary judgment, the Court must construe the evidence in the light most favorable to the nonmoving party, drawing all justifiable inferences in its favor. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## **ANALYSIS**

Plaintiffs each assert one claim under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, and one under the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. §§ 621 *et seq*. Defendant asks the Court to award it summary judgment on all claims. The Court considers each claim in turn.

## I. Plaintiffs' Race Discrimination Claims

### A. Disparate Treatment Theory

Defendant asserts that Plaintiffs' race discrimination claims fail as a matter of law because they cannot satisfy the fourth prong of a *prima facie* case of race discrimination in the context of a corporate workforce reduction: namely, Plaintiffs cannot provide evidence tending to indicate that New Era management singled them out for discharge because of their race. (Docket No. 27 at 5). Defendant contends that even if Plaintiffs can establish a *prima facie* case of race discrimination, they cannot as a matter of law prove that New Era's legitimate, nondiscriminatory reason for terminating them was in fact a pretext for unlawful race discrimination.

Plaintiffs argue that they have established a *prima facie* case of race discrimination based on circumstantial evidence because Plaintiffs are members of a protected class, were qualified for their jobs, were terminated, and were replaced by a person outside the protected class. (Docket No. 30 at 9-10). They further contend that they have demonstrated a host of "weakness[es], implausibilities, inconsistencies, incoherencies or contradictions" in Defendant's explanation that would enable a reasonable fact finder to find pretext and infer that race discrimination is what actually motivated Plaintiffs' discharge. (*Id.* at 18-19).

As Plaintiffs implicitly concede, no direct evidence of race discrimination exists. (*See id.* at 9-10). To establish a Title VII claim for race discrimination lacking direct evidence, Plaintiffs must usually demonstrate that (1) they are a member of a protected class, (2) they were subjected to an adverse employment action, (3) they were qualified, and (4) they were replaced by someone outside of the protected class. *Lockett v. Marsh USA, Inc.*, 354 F. App'x 984, 992 (6th Cir. 2009). Defendant asks the Court to apply the modified version of the *prima facie* case that is

appropriate in the context of a work force reduction, where the discharge is deemed to have been more likely than not motivated by an economic need to cut positions. *See Mynatt v. Lockheed Martin Energy Sys., Inc.*, 271 F. App'x 470, 477 (6th Cir. 2008) (citing *Barnes v. GenCorp. Inc.*, 896 F.2d 1457, 1465 (6th Cir. 1990) (if discharge is part of cutbacks due to economic necessity, discrimination plaintiff must present "additional direct, circumstantial, or statistical evidence tending to indicate that the employer singled out the plaintiff for discharge for impermissible reasons")). Plaintiffs do not respond to this argument but assert that they were replaced by two individuals outside of the protected class, which implicitly forecloses the possibility of a work force reduction. (Docket No. 30 at 9-10).

"A plaintiff whose employment position is eliminated in a corporate reorganization or work force reduction carries a heavier burden in supporting charges of discrimination than does an employee discharged for other reasons." *Wilson v. Firestone Tire & Rubber Co.*, 932 F.2d 510, 517 (6th Cir. 1991). A work force reduction (also known as a reduction in force, or "RIF") occurs when "business considerations cause an employer to eliminate one or more positions within the company." *Barnes*, 896 F.2d at 1465. "An employee is not eliminated as part of a work force reduction when he or she is replaced after his or her discharge." *Id.* Thus, if the employee was replaced, the ordinary *prima facie* case remains unmodified. An employee is considered replaced "only when another employee is hired or reassigned to perform the plaintiff's duties." *Id.* However, an employee is not considered replaced "when another employee is assigned to perform the plaintiff's duties in addition to other duties, or when the work is redistributed among other existing employees already performing related work." *Id.*

In the instant case, Plaintiffs acknowledge that New Era's sales and revenue "dropped precipitously" amid the recession of 2008, and that "New Era was forced to reduce operating

expenses, including payroll, and determined that to do so, it needed to reduce its overall workforce." (Docket No. 32 at 4). They do not cite any testimony in the record to dispute that New Era developed objective criteria for the layoff and used it to determine which employees would be retained and which would be laid off. *Id.* at 5. They acknowledge that eight employees were identified for layoff: three were Caucasian, three were African-American, one was Asian-American, and one was Hispanic. *Id.* at 6. Plaintiffs assert they were "replaced" by two Korean-Americans, Myong Spates and Micha Taylor. However, Spates was not discharged, and Plaintiffs have not introduced evidence that she was "reassigned" to perform Plaintiffs' duties. In fact, they state that "[s]he continues in the packing department where she has always worked." (Docket No. 30 at 7). Whether she continues doing the work she has always done or has taken over additional duties, including those of Plaintiffs, there is no evidence she was "reassigned" to perform Plaintiffs' duties. *See Geiger v. Tower Auto.*, 579 F.3d 614, 623 (6th Cir. 2009). Taylor, meanwhile, was laid off in November 2008, but in January 2009 she was recalled, in Plaintiffs' words, "because she was needed." (Docket No. 30 at 10); *see Williams v. Tyco Elec. Corp.*, 161 F. App'x 526, 534-35 (6th Cir. 2006) (no "replacement" where individuals were hired after reduction in force due to change in circumstances). The undisputed evidence supports a finding that Plaintiffs were not "replaced"; rather, their workload was redistributed among the remaining employees. Subsequently, Taylor was called back due to changed circumstances. Accordingly, the heightened *Barnes* RIF burden applies, and Plaintiffs must present "additional direct, circumstantial, or statistical evidence tending to indicate that the employer singled out the plaintiff[s] for discharge" due to their race.

Plaintiffs' statistical evidence lends no support to their argument that they were terminated because of their race. The employees identified for layoff were Caucasian, African-

American, Hispanic, and Asian-American. (Docket No. 32 at 6). On its face, the RIF did not affect any one racial group disproportionately. Plaintiffs argue that because in November 2008 only 6 of Defendant's 25 employees were African-American, the layoff reduced New Era's African-American workforce by 50 percent.[3] Statistics lose their probative value, though, when the sample size is too small. *Tinker v. Sears, Roebuck & Co.*, 127 F.3d 519, 524 (6th Cir. 1997) (citing *Simpson v. Midland-Ross Corp.*, 823 F.2d 937, 944 (6th Cir. 1987) ("For statistics to be valid and helpful in a discrimination case, both the methodology and the explanatory power of the statistical analysis must be sufficient to permit an inference of discrimination.") (internal citation omitted)). Just as statistical evidence concerning "50 percent" of a sample size of 2 employees could not be probative of discrimination, absent other evidence, the Court finds that statistical evidence concerning "50 percent"—in other words, 3—of 6 employees, without more, does not "tend[] to indicate" that Plaintiffs were singled out for termination because of their race.[4] *See Gault v. Zellerbach*, 172 F.3d 48, at *2, No. 97-4238 (6th Cir. Dec. 16, 1998) (per curiam) (in a RIF discrimination case, sample size of 6 was too small for statistical evidence to have probative value); *Simpson*, 823 F.2d at 943 (statistical evidence derived from sample of only 17 employees is suspect). Plaintiffs' statistical evidence does not satisfy the fourth prong of their *prima facie* discrimination case.

---

[3] While 1 of New Era's 5 Asian-American employees (Taylor) was terminated—a 20 percent reduction—Plaintiffs discount that statistic because the employee returned to work six weeks later. Thus, they argue, Defendant fired 50 percent of its African-American workforce while retaining 100 percent of its Asian-American workforce.

[4] The Sixth Circuit has illustrated this point with a helpful example. "[I]f an employer selects 60% of the blacks and 80% of the whites, this very likely indicates a real difference in selection procedures if he is choosing 600 blacks out of 1,000 and 800 whites out of 1,000. On the other hand, if he chooses 3 blacks out of 5 applicants and 4 whites out of 5 applicants, both common sense and rigorous statistical analysis tell us that it is much more likely that mere chance is the controlling factor." *Black v. City of Akron, Ohio*, 831 F.2d 131, 134 (6th Cir. 1987).

Plaintiffs have also introduced evidence indicating that supervisor Jeff Price made a large number of vile, race-based remarks, including "lazy nigger," "stupid motherfucking nigger," and "I'm gonna kill me some niggers," in the years before and after their termination. (Docket No. 30 at 6, citing Docket No. 31-6, *passim*). James Northington, an African-American who worked at New Era, testified to those statements (among many others) in a deposition taken for his own race discrimination suit against New Era, which is currently pending before another department of this Court. *Northington v. New Era, Inc.*, No. 3:11-cv-00995 (M.D. Tenn., filed Oct. 19, 2011).

As a preliminary matter, the Court finds that these statements do not constitute direct evidence that Plaintiffs' termination was racially motivated. In the Sixth Circuit,

> [D]irect evidence is that evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions. Consistent with this definition, direct evidence of discrimination does not require a factfinder to draw any inferences in order to conclude that the challenged employment action was motivated at least in part by prejudice against members of the protected group. [T]he evidence must establish not only that the plaintiff's employer was predisposed to discriminate on the basis of [race], but also that the employer acted on that predisposition.

*DiCarlo v. Potter*, 358 F.3d 408, 415 (6th Cir. 2004) (internal citations and quotation marks omitted). Where discriminatory statements are made outside the context of the decision to terminate, "an inference is required that such a bias may have played a role in the decision to select these plaintiffs [for termination]." *Rowan v. Lockheed Energy Sys., Inc.*, 360 F.3d 544, 550 (6th Cir. 2004).[5] Here, there is no evidence Price's discriminatory statements referred to

---

[5] In earlier cases, the Sixth Circuit has held that discriminatory statements made outside the context of termination constitute direct evidence of discriminatory intent, but those cases are distinguishable from the instant case. *See DiCarlo*, 358 F.3d at 415-16 (previous discriminatory statements were directed at plaintiff) and *Talley v. Bravo Pitino Rest.*, 61 F.3d 1241, 1249 (6th Cir. 1995) (previous discriminatory statements were made by owner and general manager with hiring and firing authority), *overruled on other grounds by Gross v. FBL Fin. Servs. Inc.*, 557 U.S. 167, 129 (2009); *see generally Chattman v. Toho*

Plaintiffs or were made in their presence, or that Plaintiffs were even aware he had made them. Nor were the statements made in connection, temporal or otherwise, with the decision to lay off employees. Moreover, while Price recommended Plaintiffs for discharge, he did not make the final decision to discharge them. In order to conclude that Plaintiffs' termination was motivated by race discrimination, a fact finder would be required to draw two inferences: one, that Price's generalized racism was so overpowering that his role in recommending two African-Americans for layoff (along with six others) was necessarily infected by discriminatory animus; and two, that his discriminatory animus motivated his employer's decision. Accordingly, his statements must be considered circumstantial evidence.

Price's statements are also not circumstantial evidence of New Era's discriminatory intent under a recent Sixth Circuit opinion on "cat's paw" liability, in which an employer relies on a supervisor's discriminatory information flow when making an employment decision. In *Chattman v. Toho Tenax America, Inc.*, a supervisor who had made several disparaging comments about African-Americans recommended that the African-American plaintiff be terminated for horseplay in his work site. 686 F.3d 339, 343-44 (6th Cir. 2012). Based on the supervisor's recommendation, company officials issued the plaintiff a final written warning that had the effect of making him ineligible for a promotion. *Id.* at 344-45. The Court, finding dispositive the reasoning of a 2011 Supreme Court decision, held that in order to impute a supervisor's racial animus to the ultimate decisionmaker, a plaintiff must show that (1) the supervisor "perform[ed] an act motivated by [discriminatory] animus that [was] *intended* . . . to cause an adverse employment action," and (2) the supervisor's "discriminatory action is a proximate cause of the ultimate employment action." *Id.* at 351 (emphasis and ellipsis in

---

*Tenax America, Inc.*, 686 F.3d 339, 346-47 (6th Cir. 2012) (discussing "tension" in Sixth Circuit precedent on whether discriminatory statements unconnected with termination constitute direct or indirect evidence).

original) (quoting *Staub v. Proctor Hospital*, __ U.S. __, 131 S.Ct. 1186, 1194 (2011) (emphasis in original)).

The proximate causation prong echoes the requirement of a "causal nexus" between the discrimination and the adverse action that had already existed in Sixth Circuit case law. *See Madden v. Chattanooga City Wide Serv. Dept.*, 549 F.3d 666, 677 (6th Cir. 2008); *see also Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 354-55 (6th Cir. 1998) (discriminatory remarks by one without hiring and firing authority but who nonetheless "played a role" in the adverse employment decision are relevant evidence of employer's discriminatory motive). It is the specific intent prong, however, that proves fatal to Plaintiffs' case. There is simply no evidence in the record that Price "perform[ed] an act motivated by [discriminatory] animus that [was] *intended* . . . to cause an adverse employment action." *Chattman*, 686 F.3d at 351 (quoting *Straub*, 131 S.Ct at 1194) (emphasis in original). None of the racially discriminatory statements he is alleged to have made were directed at Plaintiffs. In fact, Plaintiffs were not even aware of the statements, which had nothing to do with Plaintiffs or their termination. Because evidence of Price's racism is completely divorced from his involvement in the process of deciding which employees should be laid off, it cannot be said that "the adverse action [was] the intended consequence of [his] discriminatory conduct." *Id.* at 352 (quoting *Straub*, 131 S.Ct at 1192). Therefore, Plaintiffs have not met their heightened burden of producing "additional direct, circumstantial, or statistical evidence tending to indicate that the employer singled out the plaintiff[s] for discharge for impermissible reasons." *Barnes*, 896 F.2d 1457, 1465.

Even assuming *arguendo* that Plaintiffs could meet their burden at the *prima facie* stage, Defendant has proffered undisputed evidence of a legitimate, non-discriminatory reason for their

layoff: a reduction in force necessitated by the recession of 2008. (Docket No. 32 at 4). Plaintiffs cannot demonstrate that the reason had no basis in fact, did not actually motivate their discharge, or was insufficient to motivate their discharge. *See Manzer v. Diamond Shamrock Chems.*, 29 F.3d 1078, 1084 (6th Cir. 1994), *overruled on other grounds by Geiger*, 579 F.3d 614. As an initial matter, the first and third options are foreclosed by Plaintiffs' acknowledgement that "New Era was forced [by a decline in sales] to reduce operating expenses, including payroll, and determined that to do so, it needed to reduce its overall workforce." (Docket No. 32 at 4). The RIF was based in fact and could have been sufficient to motivate their discharge.

Plaintiffs attempt to demonstrate that the RIF did not actually motivate their discharge by arguing that Spates and Taylor were not "cross-trained," which was one of the criteria used to determine who would be laid off. Plaintiffs contend that "Greene's work experience is the very same as Spates [*sic*]!" (Docket No. 30 at 21). However, the deposition testimony does not support this statement. Greene testified that she worked on a machine called the "draw-to" three times, while Spates' testimony suggests that she worked on the "draw-to" for a period in 2005 and 2006 and ending when the plant moved in 2007. (Docket Nos. 27-2 at 8 & 31-8 at 6-8). In any event, cross-training was only one of the RIF criteria; other testimony supports the conclusion that Plaintiffs did not "demonstrate[] consistently that they could work well with others." (*See*, *e.g.*, Docket Nos. 31-8 (Spates describing many disputes with Plaintiffs making it "very uncomfortable to come to work") & 31-9 at 10 (Taylor grew so frustrated by Plaintiffs' abuse that she informed Price of intention to quit)).[6] Based on the evidence in the record, no reasonable factfinder could find that New Era's "proffered explanation is unworthy of credence." *Manzer*, 29 F.3d at 1082 (6th Cir. 1994) (quoting *Texas Dep't of Community Affairs v. Burdine*,

---

[6] Plaintiffs also cite New Era's failure to follow its purported seniority policy as evidence of pretext. That evidence is discussed *infra* Section II.

450 U.S. 248, at 1095 (1981)). Given the dearth of evidence that discrimination motivated their discharge, or moreover that Defendant's proffered nondiscriminatory reason was pretextual, Plaintiffs cannot establish a Title VII race discrimination claim alleging disparate treatment.

B. **Disparate Impact Theory**

Defendant argues that Plaintiffs failed to allege a disparate impact race discrimination claim in their complaint, and that even if they did properly plead disparate impact, they have not identified the "specific . . . practices that are allegedly responsible for any statistical disparities," nor are the statistics they cite of any statistical significance. (Docket No. 33 at 2). Plaintiffs assert that they are challenging the RIF criteria, which caused a 50 percent reduction in New Era's African-American workforce—from 6 to 3.

For the sake of argument, the Court will assume that Plaintiffs met the minimum standard of notice pleading by alleging that the RIF selection criteria "fell more harshly on members of the black race." (Docket No. 1 at 4). To prevail under a disparate impact theory, Plaintiffs must provide

> proof that a challenged practice, neutral on its face, had a disproportionately adverse effect on the members of a legally protected group. Statistical evidence alone can suffice in a disparate impact case if it is of a kind or degree sufficient to correlate a specific employment or union practice with the complained-of adverse effect.

*Bondurant v. Air Line Pilots Ass'n, Int'l*, 679 F.3d 386, 394 (6th Cir. 2012) (internal citations omitted). The Court has already discussed the unworthiness of Plaintiffs' statistical evidence and finds that the methodology is "inherently suspect" and does not permit a statistical correlation nor any inference of discrimination. *See Gault*, 172 F.3d at *2 (selectively chosen sample size of 6 RIF'd employees renders conclusions "worthless"); *Tinker*, 127 F.3d at 524 ("For statistics to

be valid and helpful in a discrimination case, both the methodology and the explanatory power of the statistical analysis must be sufficient to permit an inference of discrimination.").

Because Plaintiffs have not carried their summary judgment burden, judgment will be awarded to Defendant on the race discrimination claims.

## II. Plaintiffs' Age Discrimination Claims

Defendant asks the Court to award summary judgment in its favor on Plaintiffs' age discrimination claims because Plaintiffs cannot meet the heightened *prima facie* burden of showing additional evidence of discrimination in a work force reduction case. Moreover, they argue, Plaintiffs cannot show that New Era's legitimate, nondiscriminatory reason for discharging them was pretextual. Plaintiffs respond that they have introduced direct evidence of age-based discrimination in the form of the statement allegedly made about Plaintiffs by Jeff Henn. Even if the statement is viewed as indirect evidence of age discrimination, Plaintiffs argue, they have established a *prima facie* case and can demonstrate that Defendant's RIF was pretextual on the basis of the Henn statement, New Era's failure to follow its own seniority policy, and the evidence of identical cross-training discussed in Section I.

The ADEA prohibits an employer from failing or refusing to hire, discharging, or discriminating "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age . . . ." 29 U.S.C. § 623(a)(1). At the summary judgment stage, Plaintiffs presenting direct evidence of age discrimination must show that a reasonable jury could find "by a preponderance of the evidence . . . that age was the 'but-for' cause of the challenged employer decision." 579 F.3d at 621 (citing *Gross v. FBL Fin. Services, Inc.*, 557 U.S. 167, 180 (2009)). The burden of persuasion does not shift to the employer to show that it would have taken the action regardless of age, even when a plaintiff has

15

produced some evidence that age was one motivating factor in that decision." *Gross*, 557 U.S. at 180. In contrast, age discrimination claims based on circumstantial evidence are still analyzed under the McDonnell Douglas burden-shifting framework. *Geiger*, 579 F.3d at 622. Plaintiffs must show 1) that they were members of a protected class; 2) that they were discharged; 3) that they were qualified for the positions held; and 4) in the context of a RIF, "additional direct, circumstantial, or statistical evidence tending to indicate that the employer singled out the plaintiff for discharge for impermissible reasons." *Id.* at 622-23; *Schoonmaker v. Spartan Graphics Leasing, LLC*, 595 F.3d 261, 265 (6th Cir. 2010). Defendant must then proffer a legitimate, nondiscriminatory reason for their termination, which returns the burden to Plaintiffs to demonstrate that the reason was pretextual.

Plaintiffs argue that Jeff Henn's statement that Plaintiffs were "old," "needed to retire," and were "too old to continue working" constitute direct evidence that New Era terminated them due to their age. "Direct evidence of discrimination is that evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 570 (6th Cir. 2003) (internal citation and quotation marks omitted). It "proves the existence of a fact without requiring any inferences." *Rowan,* 360 F.3d at 548. "The evidence must establish not only that the plaintiff's employer was predisposed to discriminate on the basis of [age], but also that the employer acted on that predisposition." *DiCarlo*, 358 F.3d at 415 (citation omitted). The statement "Why don't you retire and make everybody happy?" when said by a supervisor has been found not to constitute direct evidence of age discrimination, *Scott v. Potter*, 182 F. App'x 521, 526 (6th Cir. 2006), while "He is going to leave here when he is 62. I am going to see to it," also spoken by a supervisor, did constitute direct evidence of age discrimination, *Hale v. ABF Freight System,*

16

*Inc.*, 2012 WL 5259156, No. 11-6440, Slip Op. at *7 (6th Cir. Oct. 25, 2012) (noting that, to determine relevancy of discriminatory remarks, look at speaker's role and substance of remarks). By connecting specific age-related bias to the decision to terminate, the *Hale* court reasoned, the statement required no inferences to establish the speaker's age-based discriminatory animus. *Id.* (". . . [the challenged] statement is qualitatively different from the statement in *Scott* because she unequivocally links Hale's age to her decision to terminate him").

If the difference between direct and indirect evidence can be measured by the gap between "I am going to see to it" that he leaves "when he is 62," on the one hand, and "Why don't you retire?" on the other, Henn's statement cannot amount to direct evidence of age discrimination. While the comments clearly refer to age ("too old"), they do not mention termination, simply retirement. They were made two or three months before Plaintiffs were laid off, in a meeting focused on New Era's sales—a meeting in which the need to reduce the workforce was not discussed. (Docket No. 31-6 at 31, 37-38). Though he was a decisionmaker when it came to hiring and firing, Henn did not evince any intent to use his power to terminate Plaintiffs, nor did the conversation pertain to their termination. *See Geiger*, 579 F.3d at 621-22 (Because statement was not made "in relation to the decision to terminate [the plaintiff's] employment, this conduct is not direct evidence."). To draw the conclusion that Henn discharged them due to their age, then, one must first infer that he was prepared to take action to see that they retired. Accordingly, the Court finds that Henn's statements do not constitute direct evidence that he acted on age-based bias when discharging Plaintiffs.

Even so, Henn's remark satisfies Plaintiffs' *prima facie* burden of producing circumstantial evidence "tending to indicate" that New Era singled them out for discharge because they were "too old." *See Barnes*, 896 F.2d at 1466 (Plaintiff subject to RIF can satisfy

fourth element of *prima facie* by demonstrating "that the employer made statements indicative of a discriminatory motive"). Defendant does not challenge any other elements of Plaintiffs' *prima facie* case (Docket No. 27 at 5 n.4 and 10-11) but has proffered evidence of a recession-induced work force reduction as its legitimate, nondiscriminatory reason for terminating Plaintiffs.

Plaintiffs attempt to meet their burden of demonstrating pretext by showing that the RIF did not actually motivate New Era's decision to discharge them. *See Manzer*, 29 F.3d at 1084. In addition to the flawed "cross-training" evidence discussed *supra* Section I, they cite New Era's failure to follow its purported seniority policy as evidence that their termination was not motivated by the work force reduction, which would permit a factfinder to infer discrimination. *See Kline v. Tennessee Valley Authority*, 128 F.3d 337, 347 (6th Cir. 1997). To support their assertion that layoffs at New Era should have been governed by a seniority policy, they cite an orientation checklist signed by each Plaintiff in 1985 indicating that they were oriented on "seniority - - job posting" among other things; a handwritten response to a 1994 EEOC charge stating that "Seniority is only a factor in job posting and lay off situations"; and an excerpt from the medical leave section of the 2006 New Era Employee Handbook stating that "For purposes of promotion, job assignment, and seniority-related benefits, Medical/Parental Leave shall have no effect." (Docket Nos. 31-11 at 2-9 & 31-4 at 3, 6).[7]

As an initial matter, no reasonable factfinder could infer the existence of a policy requiring junior employees to be laid off before senior employees based on this evidence. At most, it supports the proposition that seniority was "a factor" in layoffs in the mid-1990s, and that medical or parental leave did not adversely affect unspecified "seniority-related benefits"—perhaps the accrual of paid time off—in 2006. (Meanwhile, three words on a 1985 checklist,

---

[7] Plaintiffs also refer to deposition testimony about seniority-based layoffs but provide no citation to the record, nor could the Court locate this testimony. (Docket No. 30 at 20).

devoid of any context, are not probative of the existence of a layoff policy.) It is noteworthy that the only evidence of a "seniority policy" Plaintiffs could find in a modern New Era employee handbook was a brief reference buried in boilerplate language about medical leave. Contrary to Plaintiffs' opinions and suppositions about who should have been laid off (Docket Nos. 27-1 at 5 & 27-2 at 17), these fragments do not establish that Defendant—an at-will employer whose management consistently testified did not have a seniority policy—violated any internal policy during its 2008 RIF. They do not even create a genuine issue of material fact on the existence of such a policy.

In any event, "an employer's failure to follow self-imposed regulations or procedures is generally insufficient to support a finding of pretext." *White v. Columbus Metro. Hous. Auth.*, 429 F.3d 232, 246 (6th Cir. 2005). Plaintiffs have not introduced sufficient evidence to permit a reasonable factfinder to conclude that their termination was not actually motivated by the nondiscriminatory RIF criteria. Because Plaintiffs cannot demonstrate that New Era's reason was pretextual, they cannot establish a circumstantial case of age discrimination.[8]

### III. Mixed-Motive Discrimination

Because the Court grants summary judgment for Defendant on all claims, it need not reach Defendant's argument on mixed-motive discrimination. (*See* Docket No. 27 at 10).

## CONCLUSION

Accordingly, the Court GRANTS Defendant's motion for summary judgment on all claims.

---

[8] The Court could not determine whether Plaintiffs were also attempting to prove age discrimination under a disparate impact theory, but as it was not pled in their complaint, the argument is waived. (*See* Docket No. 1).

An appropriate Order shall be entered.

_____
KEVIN H. SHARP
UNITED STATES DISTRICT JUDGE